## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### CASE NO.

KRYSTALE ROBERTS, as Personal
Representative of the ESTATE OF
FRANCES M. CARVER,

     Plaintiff,

     v.

PARKLANDS FACILITY, INC. d/b/a
PARKLANDS CARE CENTER,

     Defendant.

_____/

### <u>NOTICE OF REMOVAL</u>

Defendant, PARKLANDS FACILITY, INC. d/b/a PARKLANDS CARE CENTER by and through undersigned counsel, hereby gives notice pursuant to the provisions of 28 U.S.C. §1441(a) of the removal of this action from Circuit Court of Alachua County to the United States District Court for the Northern District of Florida, Gainesville Division, based upon the grounds for removal as follows:

1.      Plaintiff filed this case, Case No. 2021-002237, in the Circuit Court of the Eighth Judicial Circuit in and for Alachua County, Florida on August 10, 2021. *See* Complaint, attached as Exhibit A.

2.      Defendant was served on August 25, 2021. *See* Exhibit B.

3.      Defendant has thirty (30) days to file a notice of removal pursuant to 28 U.S. Code §1446; thus, this notice is timely.

4.      Removal to the United States District Court for the Northern District of Florida is proper based on this Court's original jurisdiction under 28 U.S.C. §1331 because Plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e (the "PREP Act"), and thus arise under federal law.

5.      In addition, federal jurisdiction is also appropriate as this state action raises a federal question.

6.      As required by 28 U.S.C. §1446(d), concurrent with this filing, Defendant is filing a true and accurate copy of this Notice of Removal with the Circuit Court of Alachua County of the State of Florida and all parties of the removal of this action from that court.  Defendant is also providing notice to Plaintiff of this filing pursuant to 28 U.S.C. §1446(d).

7.     By filing this Notice of Removal, Defendant does not waive any other rights or defenses that may be available to it.

## Nature of the Case

8.     Plaintiff alleges that Frances M. Carver was a resident at Parklands Care Center in 2020 and died on April 27, 2020 after contracting COVID-19. *See* Exhibit A.

9.     Plaintiff asserts state-law causes of action against Defendant for negligence causing wrongful death. Plaintiff's claims arise from Defendant's response to the COVID-19 pandemic and their administration and use of testing equipment, personal protective equipment ("PPE"), infection control measures, safety equipment, and other countermeasures in an attempt to prevent or mitigate the spread of COVID-19. ¶¶10-14, Exhibit A.

10.     Plaintiff alleges, *inter alia*, that Defendant was negligent in providing adequate and appropriate protective and support services against COVID-19 and having adequate policies and procedures in place for the protection, supervision, and safety of its residents from COVID-19.  ¶¶10-14, Exhibit A.

## Plaintiff's Claims are Covered by the PREP Act

11.     When the PREP Act's immunity provision is triggered—as it was by the Secretary of Health and Human Services' March 17, 2020 declaration,

effective February 4, 2020—its coverage is sweeping, applying to "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1) (2018) (emphasis added).

12.    Plaintiff's claims fall within that grant of immunity because they arise directly out of and relate to the manner in which Defendant administered, allocated and used covered countermeasures during the pandemic. ¶¶10-14; see e.g. ¶11(Defendant "failed to test employees and residents in a timely manner, and failed to provide proper PPE"), Exhibit A.

13.    The PREP Act provides that when a "disease or other health condition or other threat to health constitutes a public health emergency," the Secretary of Health and Human services may issue a declaration "recommending [] . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures" against the disease. 42 U.S.C. § 247d–6d(b)(1) (2018). When such a declaration issues, "covered persons" who administer or "use covered countermeasures" become "immune from suit and liability under Federal and State law with respect to *all claims for loss caused by, arising out of, relating to, or resulting from* the administration to or the

use by an individual of a covered countermeasure." 42 U.S.C. §247d–6d(b)(1) (2018) (emphasis added).

14.     On March 17, 2020, the Secretary of Health and Human Services issued a declaration announcing that, as of February 4, 2020, "[l]iability immunity as prescribed in the PREP Act . . . is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the Authority Having Jurisdiction to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures following a Declaration of an emergency" related to COVID-19. See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 15,201 (Mar. 17, 2020), *amended by* 85 Fed. Reg. 21,102 (Apr. 15, 2020) (the "Declaration").

15.     Further, on December 3, 2020, the HHS Secretary issued the Fourth Amendment to the Declaration ("Amendment Four") for publication in the Federal Register. 85 Fed. Reg. 79,1901 (Dec. 3, 2020). In short, Amendment Four, *inter alia*:

a.  Adopts all COVID-19 Advisory Opinions into its initiating Declaration giving that direction controlling authority over interpretations of the PREP Act, *id.* at 3, 5, 15;

b.  Declares that an *omission* to administer a covered countermeasure can fall within the PREP Act's protections, id. at 4, 13–14, 25; and

c.  Makes    explicit    that    cases    involving    COVID-19    covered countermeasures are to be in the federal court system or administrative alternative remedy system Congress provided, and that this "federal jurisdiction" is essential to the uniform provision of a national response to the COVID-19 pandemic, id. at 14, 26.

16.     Amendment Four *requires deference* to HHS's advisory opinions and formally incorporates all HHS Advisory Opinions related to COVID-19 and the PREP Act into its initiating March 10, 2020, declaration set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc. See id. at 5; Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843–44 (1984). Thus, it is beyond question that these Advisory Opinions must be given Chevron "controlling weight." *Id.*; see also Amendment Four at 15 ("This Declaration is a 'requirement' under the PREP Act.").

17.     Recently, on January 8, 2021, HHS published an Advisory Opinion to address questions raised by the Fourth Amendment. See Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, January 8, 2021.

18.    Specifically, HHS General Counsel notes that HHS has "received questions as to whether the PREP Act applies where a covered person declined to use a covered countermeasure when it arguably ought to have been used." See id. at p. 1. The Opinion states, "[t]hese inquiries were stimulated, as we understand, by a spate of recent lawsuits, most involving nursing homes and other healthcare facilities, where patients or their estates allege that patients contracted COVID-19 because the facility, among other things, failed to provide its staff with personal protective equipment ("PPE"), failed to teach the staff how to properly use that equipment, or failed to ensure that its staff used the PPE that it had been given." Id.; See ¶¶11, 13(q), Exhibit A. This is precisely what has been alleged in the instant Complaint. ¶¶11, 13(q), Exhibit A.

19.    The Opinion notes that some district courts have interpreted the scope of the immunity in subparagraph (B) as requiring "use." Id. at 3. But the Advisory Opinion then goes on to reject this view and Lutz v. Big Blue Healthcare, Inc., 2020 WL 4815100, at *8 (D. Kan. 2020), wherein, in remanding the case to state court, the Lutz Court held "[t]here is simply no room to read [the PREP Act] as equally applicable to the non-administration or non-use of a covered countermeasure." Id.

20.    The Advisory Opinion referenced above states unequivocally that the PREP Act is a "Complete Preemption Statute." Id. at 2. The Opinion also states that, in addition to complete preemption as the basis for Article III jurisdiction and removal, the Supreme Court has recognized a separate doctrine in Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005) that provides a basis for jurisdiction in these cases. Id. at 4.

21.    HHS General Counsel explains, "Under Grable, even in the absence of a claim arising under federal law, "*a federal court ought to be able to hear claims* recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." Id. (emphasis in original).

22.    Thus, a substantial federal question is implicated, for example, where "the interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court." Id. at 4-5. The Opinion states that in terms of the PREP Act, "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency *necessarily means that the case belongs in federal court*." Id. at 5 (emphasis added).

23.    The Opinion goes on to state that the Secretary, in his Fourth Amendment to his PREP Declaration, similarly concluded that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g., 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." Id.

24.    Therefore, this Advisory Opinion concludes that the Secretarial determination provides the underlying basis for invoking the Grable doctrine with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure. Id. Once invoked, the Court retains the case to decide whether the immunity and preemption provisions apply.

25.    Here, based on the face of the complaint, the totality of the allegations and the logical impact of its most central allegations, the PREP Act is implicated by Plaintiff's claims against Defendant as "covered persons" engaged in "recommended activities" under the Act.

26.    At all times relevant to the Complaint, Defendant was a "covered person" for the purposes of the PREP Act. "Covered persons" include

"qualified persons who prescribed, administered, or dispensed" countermeasures against a pandemic, and "program planners" who "supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use" of countermeasures against COVID-19. 42 U.S.C. § 247d–6d(i)(2) (2018).

27.   A "qualified person" under the PREP Act is a "licensed health professional or other individual who is authorized to prescribe, administer, or dispense [covered] countermeasures," or any other person identified as a covered person in the Secretary's emergency declaration. 42 U.S.C. § 247d–6d(i)(8) (2018). The Declaration identifies several additional categories of qualified persons, including "(a) Any person authorized in accordance with the public health and medical emergency response of [a state or local government] . . . to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures, and their officials, agents, employees, contractors and volunteers, following a Declaration of an emergency; (b) any person authorized to prescribe, administer, or dispense the Covered Countermeasures or who is otherwise authorized to perform an activity under the Emergency Use Authorization in accordance with Section 564 of the [Food, Drug, and Cosmetic Act]; and (c) any person authorized to prescribe, administer, or

dispense Covered Countermeasures in accordance with Section 564A of the FD&C Act." 85 Fed. Reg. at 15,201–02.

28.     Defendant and its staff were "qualified persons" under the Act because Parklands Care Center was licensed as a nursing facility by the State of Florida and employed licensed health professionals, including licensed nursing personnel, who were authorized to administer countermeasures against diseases such as COVID-19. Defendant's staff were also authorized to administer COVID-19 countermeasures under an Emergency Use Authorization ("EUA") issued by the FDA under Section 564 of the Food, Drug and Cosmetic Act. The EUA authorized healthcare personnel to use certain facemasks, respirators, and other PPE in healthcare settings during the COVID-19 outbreak. See Letter from Denise M. Hinton, Chief Scientist, FDA to Robert R. Redfield, Director, Ctrs. For Disease Control & Prevention, Mar. 28, 2020.

29.     Defendant was also a "program planner" because they engaged in both the management and operation of countermeasure programs, including programs to control infections at the facility through visitation restrictions, such as limits on the number of visitors and visitor screening requirements,

and the administration and/or use of countermeasures, such as PPE, to prevent and mitigate COVID-19.

30. In addition, PPE and test kits are covered countermeasures. The Declaration broadly defines covered countermeasures for purposes of the current pandemic to include "any . . . device" used to "diagnose, . . . prevent, or mitigate COVID-19" and regulated by the FDA or authorized for emergency use by the FDA. 85 Fed. Reg. at 15,202. PPE devices such as surgical masks and N95 respirators fall within this definition, as they prevent the spread of COVID-19 and are regulated as medical devices by the FDA. See 21 C.F.R. § 878.4040.

31. Moreover, the Secretary made clear in an amendment to the declaration that all "respiratory protective devices approved by the National Institute for Occupational Safety and Health" are covered countermeasures. Further, COVID-19 test kits are similarly regulated by the FDA. As of June 30, 2020, 120 different brands of in vitro test kits and 37 molecular-based tests have been authorized for emergency use during the COVID-19 pandemic. U.S. Food & Drug Administration, Emergency Use Authorization.

32. Further, as HHS explained in an advisory opinion interpreting the PREP Act, "Congress did not intend to impose a strict-liability standard on

covered persons for determining whether a product is a covered countermeasure." Robert P. Charrow, General Counsel, Dep't of Health & Human Servs., Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration under the Act 4 (as modified May 19, 2020) ("HHS Advisory Opinion").

33.    Thus, "a person or entity that otherwise meets the requirements for PREP Act immunity will not lose that immunity—even if [a] product is *not* a covered countermeasure—if that person or entity reasonably could have believed that the product was a covered countermeasure." Id. (citing 42 U.S.C. § 247d-6d(a)(4)(A) (2018)). Defendant's belief that the test kits and PPE their staff used to diagnose and treat residents were covered by the PREP Act was at least reasonable, given how many COVID-19 test kits and articles of PPE are covered countermeasures. Accordingly, even if the precise test kits and PPE that Defendant's staff used to diagnose and treat residents were not covered countermeasures, Defendant is still covered by PREP Act immunity.

34.    Plaintiff's claims fall within the scope of the PREP Act as they are "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. §247d-6d(a)(1) (2018) (emphasis added). Plaintiff's claims arising

out of Defendant's administration, allocation, and use, of COVID-19 precautions – countermeasures – in response to the COVID-19 pandemic. Plaintiff specifically takes issue with the PPE used by the staff at the facility in its Complaint. ¶¶11, 13(q), Exhibit A.

35.   Plaintiff attacks the adequacy of the protective services – countermeasures – that Defendant used in fighting against COVID-19 and the adequacy of Defendant's COVID-19 countermeasure policies and procedures in place. Plaintiff asserts, *inter alia*, "failure to take necessary precautions," improper PPE, improper protocols and procedures, and "failure to perform adequate testing," "failing to supply proper masks and gowns weeks, and forcing staff to reuse PPE," and "[f]ailing to follow federal guidelines with regard to COVID-19." *See* ¶¶10-14, Exhibit A.

36.   Plaintiff's claims thus undoubtedly fall under the PREP Act, which encompasses "*any* claim for loss that has a causal relationship with" the administration or use of a covered countermeasure. 42 U.S.C. §247d-6d(a)(2)(B) (2018) (emphasis added).

37.   Because the PREP Act provides the exclusive remedy for plaintiff's state law claims, they are completely preempted by federal law.

38.    "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003).

39.    However, the doctrine of complete preemption creates an exception to this rule: "When [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b)." Id. at 8.

40.    A federal statute completely preempts a state law cause of action when it "provide[s] the exclusive cause of action for the claim and also set[s] forth procedures and remedies governing that cause of action." Anderson, 539 U.S. at 8.

41.    In sum, "[t]he complete preemption doctrine 'prevent[s] a plaintiff from avoiding a federal forum when Congress has created a federal cause of action with the intent that it provide the exclusive remedy for the particular grievance alleged by the plaintiff.'" Rudel v. Hawaii Mgmt. All. Assoc., 937 F.3d 1262, 1270 (9th Cir. 2019) (quoting Hansen v. Grp. Health Coop., 902 F.2d 1051, 1057–58 (9th Cir. 2018)).

42.     The above situation is exactly what Congress did here: The PREP Act provides an exclusive federal cause of action for claims arising out of or relating to the administration and use, or lack of administration and use, of covered counter measures, 42 U.S.C. § 247d-6d(d)(1) (2018), and it prescribes the procedures and remedies governing that cause of action, 42 U.S.C. § 247d-6d(e) (2018). It thus completely preempts state-law causes of action related to such claims. It expressly states that the private right of action it creates is "an exclusive Federal cause of action." 42 U.S.C. § 247d-6d(d)(1) (2018).

43.     Thus, as the New York Appellate Division has held, there is no doubt that the "exclusive remedy under the statute is a federal cause of action to be brought in federal court" and that state law claims like Plaintiff's are completely preempted. Parker v. St. Lawrence Cty. Pub. Health Dep't, 954 N.Y.S. 2d 259, 262 (App. Div. 2012).

44.     Moreover, in removing any doubt, on January 8, 2021, HHS stated unequivocally that the PREP Act is a "Complete Preemption Statute" in its latest Advisory Opinion addressing the PREP Act. See Advisory Opinion 21-01 HHS explained that the PREP Act is a statute that completely preempts given that it "both" establishes a federal cause of action as the only viable claim and it vests exclusive jurisdiction in the federal court. Id. at 2.

45.    Furthermore, while several district courts have reached varying conclusions on this issue, at least two (2) recent district court decisions support that the PREP Act is a complete preemption statute. See Rachal v. Natchitoches Nursing & Rehabilitation Center LLC, et. al., No. 1:21-CV-00334 (W.D. La. April 30, 2021) (attached); Garcia v. Welltower OpCo Group LLC, No. SACV 20-02250JVS(KESx), 2021 WL 492581 (C.D. Ca. Feb. 10, 2021)(attached).

46.    Altogether, Plaintiff's exclusive remedy is through the Act's Covered Countermeasure Process Fund or through a federal cause of action under the Act for death or serious physical injury proximately caused by willful misconduct. Id. § 247d-6d(d)(1).

47.    As Plaintiff has alleged claims that are completely preempted under a federal statute, this Court has original jurisdiction pursuant to 28 U.S.C. §1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

48.    Therefore, Plaintiff's claims must be removed to federal court. Anderson, 539 U.S. at 8.

## **Alternatively, Plaintiff's Claims are Subject to Federal Question Jurisdiction**

49.     Alternatively, even if Plaintiff's claims are not subject to complete preemption, federal question jurisdiction does exist.

50.     Plaintiff will likely argue that because the allegations in the complaint are based in state negligence law, federal question jurisdiction is not a basis for removal. However, even though Plaintiff's claims are pled under state law, they sound in federal law. The federal PREP Act provides the *exclusive* remedy for claims for injury related to a covered defendant's use of countermeasures to combat a pandemic, and it provides immunity against such claims under all other laws.

51.     As addressed in the January 8, 2021 HHS Advisory Opinion, federal jurisdiction is also appropriate as this state action "arises under" federal law and raises a substantial federal issue. See Grable, 545 U.S. at 308.

52.     Thus, even though Plaintiff pled negligence under state law in its complaint, Federal law provides the exclusive remedy and the case implicates

federal question jurisdiction. Plaintiff cannot avoid the application of federal law simply be improperly pleading state law in its Complaint.[1]

53.     The applicability of the PREP Act poses substantial federal issues that would serve to clarify and determine vital issues of federal law. Federal question jurisdiction over state law claims may be sustained if the claims present a substantial, embedded question of federal law. <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 US 804, 808 (1986).

54.     In Amendment Four, the Secretary makes explicit that the PREP Act presents substantial federal legal and policy issues, and that there are substantial federal legal and policy interests within the meaning of <u>Grabl*e*</u> in having a unified whole-of-nation response to the COVID-19 pandemic among federal, state, local and private-sector entities. The Secretary further states that: "[t]he world is facing an unprecedented global pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy

---

[1] Note, however, that Plaintiff references the application of Federal Law in the Complaint by alleging that Defendant "fail[ed[ to follow federal guidelines with regard to COVID-19."

issues, and substantial federal legal and policy interests within the meaning of Grable . . . in having a uniform interpretation of the PREP Act. . . . . Congress delegated to me the authority to strike the appropriate Federal-state balance with respect to particular Covered Countermeasures through PREP Act declarations."

55.    Here, Plaintiff alleges that Defendant failed to prevent the decedent from contracting COVID-19 as a result of the manner in which it allocated and used covered countermeasures in combatting COVID-19 as well as its management and operation of a countermeasure program and countermeasure facility during the pandemic. Such claims by their nature arise out of and relate to Defendant's administration of covered countermeasures and invokes the PREP Act. Thus, the federal legal and policy issues described in Amendment Four and the recent HHS Advisory Opinion control and require this Court to retain this action..

WHEREFORE, Defendant respectfully request that this action be removed to the United States District Court for the Northern District of Florida, Gainesville Division, pursuant to 28 U.S.C. §§1331 and 1446.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing

has been furnished through the Court's E-Filing Portal to Katherine C. Wagner, Esq. on this 14th day of September, 2021.

HUMPHREY LAW GROUP
*Attorney for Defendant*
P.O. Box 915079
Longwood, FL  32791
Telephone:          (407) 907-0317
Facsimile:          (321) 985-0231

By:     **/s/Kelli B. Hastings**
MARK A. HUMPHREY
Florida Bar No.:          0118990
KELLI B. HASTINGS
Florida Bar No.:          00588512